# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUDITH BOKINA, | : |
|     Plaintiff, | : |
| | : |
| v. | :    3:08cv1223 (WWE) |
| | : |
| WHITCRAFT LLC and A.O. | : |
| SHERMAN, LLC, | : |
|     Defendants. | : |

## MEMORANDUM OF DECISION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Judith Bokina alleges that defendants Whitcraft LLC ("Whitcraft") and A.O. Sherman, LLC ("A.O. Sherman") violated Title VII by terminating her employment based on her gender. Plaintiff also brings state law claims of gender discrimination pursuant to Connecticut General Statutes § 46a-60(a) ("CFEPA"), tortious interference with plaintiff's contractual relationship, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. Defendants have filed a motion for summary judgment on the complaint in its entirety.

## BACKGROUND

The parties have submitted briefs and statements of fact with supporting exhibits and affidavits. These materials reveal that the following facts are not in dispute.

On January 3, 2006, defendant Whitcraft purchased the assets of Alden O. Sherman Co., Inc. ("Alden O. Sherman"). Whitcraft named its new company A.O. Sherman, LLC.

Prior to the acquisition, Alden O. Sherman had been in a financially distressed condition. Plaintiff was the Vice President at Alden O. Sherman and had reported

1

directly to Jane E. Sherman, President of the Company. Plaintiff was a direct supervisor of employees in the departments of Sales, Engineering and Operations.

Plaintiff's employment at Alden O. Sherman was subject to an employment agreement that contained a change-in-control term, providing that plaintiff would receive a severance payment equal to one year of salary and continued medical insurance benefits for three months should plaintiff be terminated or demoted after a change-in-control. The contract also required Alden O. Sherman to use its best efforts to have any purchaser assume plaintiff's employment contract as part of a purchase agreement. Prior to the purchase of Alden O. Sherman, Whitcraft received a copy of plaintiff's employment agreement. The purchase agreement specifically provided that plaintiff's employment contract was not an obligation that Whitcraft would assume.

In 2005, defendant Whitcraft hired consultant Bottom Line Solutions to conduct an Operations Review and develop a six-month transition plan. As a result of the due diligence report, Whitcraft acquired Alden O. Sherman with the intention of effecting a "Lean Manufacturing Process" and state-of the-art management. Whitcraft found that certain operating failures of Alden O. Sherman were attributable to the company's management.

In May 2005, Colin Cooper, CEO of Whitcraft, attended an employee meeting at Alden O. Sherman. He announced that no Alden O. Sherman employee would lose his or her position as a result of the purchase by Whitcraft. In two other meetings prior to the purchase of Alden O. Sherman, Cooper made the same assurance.

On December 8, 2005, Whitcraft entered into an Interim Management Agreement with Bottom Line Solutions for it to provide full time day-to-day management

of A.O. Sherman's operations until June 30, 2006. Pursuant to the Interim Management Agreement, Ed Dombroski was hired as a consultant General Manager.

On May 10, 2006, A.O. Sherman's President and Chief Operating Officer Jeffery Paul informed plaintiff that her employment was being terminated. He informed her that she would be provided with severance pay. At that meeting, he gave plaintiff a separation agreement for her review. Plaintiff signed the separation agreement that day.

The separation agreement contained a provision that plaintiff released all claims arising from her termination in exchange for 4 weeks of severance pay, 2 weeks of vacation time, and payment of her medical insurance premiums.

During the 18 month period after the acquisition, A.O. Sherman terminated 9 individuals, 6 of whom were women. During the same period, A.O. Sherman hired 21 new employees, 4 of whom were women.

Dombroski became a full-time employee in the General Manager position on July 1, 2006.

On November 6, 2006, plaintiff filed a claim of discrimination with the Connecticut Commission on Human Rights and Opportunities, alleging discrimination on the basis of age and gender.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when

reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

### Waiver and Release of Claims

Defendants argue that plaintiff knowingly and voluntarily waived and released her right to make claims pursuant to Title VII, CFEPA and state law by signing the separation agreement and accepting the benefits conferred by that agreement.

Under Title VII, an employee may waive a claim of discrimination so long as the waiver is made knowingly and willfully. Laniok v. Advisory Committee of Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1368 (2d Cir. 1991). In determining the enforceability of a waiver, the Court must consider the totality of the circumstances, including the following factors: (1) plaintiff's education and business experience; (2) the

amount of time plaintiff had possession of or access to the agreement before signing it; (3) plaintiff's role in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether plaintiff was represented by or consulted with an attorney; and (6) whether the consideration given in exchange for the waiver exceeded the employee benefits to which the employee was already entitled by contract or law. Bormann v. AT & T, 875 F.2d 399, 403 (2d Cir. 1998).

Plaintiff argues that a reasonable jury could conclude based on the totality of the circumstances that plaintiff had been forced to sign the agreement. Plaintiff maintains that she understood that she had only a few hours to sign the agreement and that she could receive her severance benefits only by signing the agreement. She also states that she was unfamiliar with employment contracts and did not understand what the release of claims provision meant. Although defendants assert that plaintiff was not pressured and that she was not prevented from consulting with an attorney, the circumstances relevant to the execution of the agreement remain disputed. Accordingly, the Court will leave plaintiff to her proof that her waiver and release was not knowing and voluntary.

Disparate Treatment Claims

Plaintiff claims that she was not hired as the new General Manager and that she was terminated on the basis of her gender in violation of Title VII and CFEPA.[1] Defendants assert that plaintiff cannot prevail on her claims.

---

[1] The Court will review the CFEPA claims according to the Title VII framework. Levy v. Comm'n on Human Rights and Opportunities, 236 Conn. 96, 103 (1996); Brittell v. Dep't of Cor., 247 Conn. 148 (1998).

5

The Court must analyze plaintiff's state and federal disparate treatment claims according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). It is well settled that to establish a prima facie claim of discrimination, the plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily or was qualified for the new position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that her termination was not made for legitimate reasons. Thomas v. St. Francis Hosp. and Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, defendants must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. Plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

Defendants argue that plaintiff cannot establish that she was qualified for the General Manager position or that she was performing her duties satisfactorily in her current role as Vice President. However, plaintiff need only satisfy the second prong of the prima facie case by showing that she possessed the basic skills necessary for performance of the job. De La Cruz v. New York Human Resources Admin., 82 F.3d 16, 20 (2d Cir. 1996). In support of her assertion that she was qualified, plaintiff points out that she worked for seven years in the position of Vice President. The Court agrees

that plaintiff retained the basic skills necessary in order to satisfy the prima facie case.

As the legitimate, nondiscriminatory reason for the adverse employment action, defendants proffer that A.O. Sherman chose to hire a General Manager with expertise and experience in "lean manufacturing," who had superior qualifications to plaintiff. Defendants justify plaintiff's termination by asserting that plaintiff's position added no value to the company.

Plaintiff counters that the new management's employment action effectively eliminated the participation of women in the management of A.O. Sherman, and that the alleged reorganization resulted in the hiring of men in management positions. Plaintiff also points out that the men who had previously reported to her did not lose their positions or have their job assignments change. The Court finds that the evidence adduced, including the disproportionate number of men who were hired for management positions, gives rise to inferences of fact that defendants' explanations may be pretextual for gender discrimination. The Court will deny summary judgment on the claims of disparate treatment based on gender discrimination.

Tortious Interference with Employment Contract

Defendants argue that summary judgment should enter on the claim that defendants tortiously interfered with plaintiff's employment contract. Specifically, defendants assert that plaintiff cannot establish that defendants acted with an improper motive or means.

To prevail on her claim, plaintiff must prove that she was in a business relationship, that defendants intentionally interfered with that relationship, and that she suffered a loss as a result. Harry A. Finman & Son v. Connecticut Truck & Trailer Serv.

Co., 169 Conn. 407, 415 (1975). Plaintiff must prove that the intentional interference involved an improper motive or means. Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 806 (1999).

Plaintiff sets forth that the circumstances give rise to an inference that defendant Whitcraft misrepresented its intention to retain all employees so that it could negotiate a price for the company more favorable to Whitcraft that would exclude the cost of triggering plaintiff's contractual change-in-control provision. Thus, plaintiff maintains that defendant Whitcraft's misrepresentation tortiously caused her to lose compensation and benefits that would otherwise have been owed under her contract.

The evidence indicates that defendant Whitcraft had identified plaintiff as an ineffective performer through its due diligence prior to its purchase of the company; at the same time, it made several representations that no employees would lose their positions as a result of the sale. Although Whitcraft did not specify the time period of the promised retention of employees, it took adverse employment action against plaintiff and other employees less than half a year after execution of the purchase agreement. The inconsistency between Whitcraft's repeated promises of employee job security prior to the asset purchase and its subsequent expeditious employee terminations raises an inference that Whitcraft may have made a misrepresentation so that it could avoid carrying the cost of plaintiff's change-in-control provision. A jury may consider whether the statement that no employee would lose his or her position constituted a misrepresentation. Accordingly, the Court will deny summary judgment.

Negligent Misrepresentation

Defendants assert that plaintiff cannot establish the requisite elements of

negligent misrepresentation.

A claim of negligent misrepresentation requires (1) that defendants made a misrepresentation of fact that defendants knew or should have known was false and (2) that plaintiff reasonably relied on the misrepresentation and suffered pecuniary harm as a result. Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 625 (2006). As previously discussed, defendant Whitcraft may have made a misrepresentation relevant to employee retention. An inference exists that plaintiff relied upon Whitcraft's assurance of continued employment only to find herself terminated within less than a half of year with the new company. The Court will leave plaintiff to her proof.

### Breach of the Covenant of Good Faith and Fair Dealing

Defendants argue that plaintiff's claim of breach of the covenant of good faith and fair dealing is barred by the separation agreement's waiver and release term, and that no unfair or discriminatory action occurred. In light of the preceding discussion, the Court will deny summary judgment on this count.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment [doc. # 62] is DENIED.

_____/s/_____

Warren W. Eginton
Senior U.S. District Judge

Dated this _15th day of July, 2011 at Bridgeport, Connecticut.